J-S47030-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN THE INTEREST OF: A.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: ALLEGHENY COUNTY OFFICE OF CHILDREN, YOUTH AND FAMILIES | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 589 WDA 2018 |

Appeal from the Order Entered April 11, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000193-2017

| | | |
|---|---|---|
| IN RE: A.A.W. A/K/A A.A.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: ALLEGHENY COUNTY OFFICE OF CHILDREN,YOUTH AND FAMILIES | : | |
| | : | |
| | : | |
| | : | No. 590 WDA 2018 |

Appeal from the Order Entered March 29, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000194-2017

| | | |
|---|---|---|
| IN RE: A.J.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: ALLEGHENY COUNTY OFFICE OF CHILDREN, YOUTH AND FAMILIES | : | |
| | : | |
| | : | |
| | : | No. 591 WDA 2018 |

Appeal from the Order Entered March 29, 2018
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): CP-02-AP-0000195-2017

| | | |
|---|---|---|
| IN RE: A.A.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |

J-S47030-18

Appeal from the Order Entered March 29, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000196-2017

BEFORE:  OLSON, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY McLAUGHLIN, J.:          FILED SEPTEMBER 17, 2018

The Allegheny County Office of Children, Youth and Families (OCYF) appeals from the orders entered on March 29 and April 11, 2018, which denied its petitions to involuntarily terminate the parental rights of K.F. (Mother) to her four children, A.F., A.A.W., A.J.J., and A.M. (Children), pursuant to 23 Pa.C.S. § 2511(a)(8), (b).  As the orphans' court failed to properly address the requirements of Section 2511(a)(8), we vacate and remand for further proceedings.

We derive the following abbreviated statement of facts and procedural history from the record.  See generally Notes of Testimony (N.T.), 03/16/2018; Orphans' Court Opinion, filed May 25, 2018.

_____

* Retired Senior Judge assigned to the Superior Court.

- 2 -

OCYF first became involved with this family in September 2010, shortly after the birth of A.F., when she was hospitalized for meningitis.[1] The case closed in October 2010 without becoming court-active.

In 2013, OCYF again became involved after the birth of A.A.W.[2] Mother was homeless and reported unaddressed mental health issues. OCYF provided services, but Mother was unable to secure permanent housing. Following discharge from a homeless shelter in April 2014, Mother left A.F. in the care of maternal grandfather, briefly relocated to Minnesota, where she left A.A.W., and moved to Delaware. OCYF obtained emergency custody of A.A.W. and secured his return to Allegheny County.

It is not clear when Mother returned to Pennsylvania. However, following the birth of A.J.J., all three children were adjudicated dependent in July 2014.[3] The three children were placed in foster care, and the court ordered Mother to obtain housing and employment, continue mental health treatment, and attend supervised visitation.

Over the next 18 months, the orphans' court found Mother to have made moderate or substantial progress in alleviating the circumstances that led to placement. In February 2016, A.A.W. and A.J.J. returned to Mother's custody.

_____

[1] A.F. was born in August 2010.

[2] A.A.W. was born in February 2013.

[3] A.J.J. was born in June 2014.

Shortly thereafter, Mother gave birth to A.M.[4]  Following allegations of abuse, A.F. was removed from maternal grandfather's custody and returned to Mother in July 2016.

In September 2016, Mother remained compliant with all services provided.  However, her mental health issues persisted, and Mother reported hearing voices.  Around this time, A.J.J. was taken to an emergency room with injuries to his genitals.  Mother failed to provide an adequate explanation for the injuries, and OCYF obtained emergency custody of the Children.[5]  In October 2016, A.M. was adjudicated dependent.  Since then, the Children have not returned to Mother's custody.

Over the next 15 months, Mother remained in moderate compliance with her goals and demonstrated progress during her interactions with the Children.  Both her housing and employment remained relatively stable. Mother also attended therapy for domestic violence and trauma.

In July and August 2017, Dr. Beth Bliss conducted separate psychological evaluations of Mother and A.F., as well as an interactional evaluation of Mother and the Children.  Following her evaluation of Mother, Dr. Bliss recommended that Mother obtain a psychiatric evaluation and follow any recommendations regarding medication.  Dr. Bliss also reported allegations of sexual abuse and inappropriate sexual behavior by the two older

_____

[4] A.M. was born in April 2016.

[5] It does not appear that Mother has been accused of any sexual abuse of the Children.

- 4 -

children.  Finally, Dr. Bliss observed the interaction between Mother and the Children.

While it appears that Mother remained in counseling, it is not clear whether Mother obtained a new psychiatric evaluation or was prescribed medication.  See N.T. at 5 (Therapist Lonha Latham testifying that, as of December 2017, Mother was not on psychotropic medication), 134 (Mother, in March 2018: "You know, I'm coping very well.  I'm off my medicine and everything.").

In November 2017, OCYF filed petitions to involuntarily terminate Mother's parental rights to Children.  Following a hearing in March 2018, the orphans' court denied the petitions.[6]  OCYF timely appealed and filed a Pa.R.A.P. 1925(b) statement; the orphans' court issued a responsive opinion.[7]

OCYF raises the following issues on appeal:

[1.] Did the [o]rphans' [c]ourt err as a matter of law and/or abuse its discretion in denying [O]CYF's petition to involuntarily terminate [] Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8) when [O]CYF proved by clear and convincing evidence grounds for termination existed[?]

[2.] Did the [o]rphans' [c]ourt err as a matter of law and/or abuse its discretion in failing to conclude that [O]CYF met its burden of proving that termination of [] Mother's parental rights would serve

_____

[6] Concomitantly, OCYF petitioned for the termination of the parental rights of the fathers to Children.  The respective fathers did not contest the petitions; their rights were terminated; and they have not appealed.

[7] OCYF filed separate notices of appeal and Pa.R.A.P. 1925(b) statements for each child.  This Court consolidated the appeals sua sponte.  Order, 05/14/2018.

the needs and welfare of the children pursuant to 23 Pa.C.S.A. § 2511(b) by clear and convincing evidence[?]

OCYF's Br. at 6.

We adhere to the following standard of review:

> In an appeal from an order terminating [or declining to terminate] parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. When the trial court's findings are supported by competent evidence of record, we will affirm even if the record could also support an opposite result. Absent an abuse of discretion, an error of law, or insufficient evidentiary support, the trial court's termination order must stand.

In re Adoption of R.J.S., 901 A.2d 502, 506-07 (Pa.Super. 2006) (internal quotations and citations omitted).

Involuntary termination of parental rights is controlled by statute. In relevant part, the Adoption Act provides:

> (a) General Rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . .

> (b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511. In order to satisfy these statutory grounds, the party seeking termination must provide clear and convincing evidence that termination is warranted. In re C.L.G., 956 A.2d 999, 1004 (Pa.Super. 2008) (en banc). In this context, "clear and convincing evidence" is defined as "testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." Id. (formatting modified; citation omitted).

> Generally, court analysis of the grounds asserted is bifurcated.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

In re P.Z., 113 A.3d 840, 850 (Pa.Super. 2015) (formatting modified; citation omitted).

In its first issue, OCYF contends that the orphans' court erred in concluding that OCYF had failed to establish the statutory requirements of Section 2511(a)(8). See OCYF's Br. at 28. According to OCYF, it was required to demonstrate three statutory elements: (1) a child has been removed from a parent's care for at least 12 months; (2) the conditions leading to removal continue to exist; and (3) termination would serve the needs and welfare of the child. Id. at 29 (citing 23 Pa.C.S. § 2511(a)(8)). OCYF asserts that, in rejecting its petition, the orphans' court applied the wrong standard when it considered Mother's progress in alleviating the conditions that led to the removal of the Children. Id. at 32-33 (citing cases relied upon by orphans' court that do not address Section 2511(a)(8)). According to OCYF, Mother's willingness or ability to remedy these conditions is irrelevant, provided the conditions still exist. Id. at 34-36 (citing in support, e.g., R.J.S., supra). Moreover, according to OCYF, the court further erred in declining to analyze the needs and welfare of the Children. Id. at 41. Citing evidence of record, OCYF suggests that it established the statutory requirements of Section 2511(a)(8) by clear and convincing evidence and therefore, OCYF concludes, the orphans' court order should be overturned. Id. at 51.

OCYF correctly identifies the statutory requirements for involuntary termination pursuant to Section 2511(a)(8):

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), the following factors must be demonstrated: (1) The child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.

P.Z., 113 A.3d at 851 (citation omitted).

There is no dispute that OCYF established the first statutory requirement. The Children were removed from Mother's care on September 17, 2016. N.T. at 81; see also, e.g., Order for Emergency Protective Custody, 09/17/2016 (granting OCYF custody of A.F.).[8] Since their removal in September 2016, the Children have not returned to Mother's care. N.T. at 81. Thus, at the time of OCYF's petitions in November 2017, the Children had been removed from Mother's care for more than 12 months. See, e.g., Petition or Involuntary Termination of Parental Rights, 11/13/2017 (regarding A.F.).

Turning to the second requirement, we agree with OCYF that the court erred in its statutory analysis. In reviewing the evidence of record, the court noted Mother's moderate compliance throughout the history of this case and highlighted the many examples of her progress in reaching her parenting goals:

> She has completed numerous parenting programs, maintained housing and employment, and maintained contact with OCYF ... She engaged in meaningful [therapeutic] treatment ... [making] great progress in [counseling] sessions and ... [making] the

_____

[8] The record contains similar orders for each of the Children.

- 9 -

connection between her own history of trauma and her lack of protection of her own children.

Orphans' Ct. Op. at 13. Based on these findings, the court suggested that Mother made "some meaningful progress," concluding as follows:

> Mother has remedied the conditions [that] led to removal of the [C]hildren. She has maintained housing and employment, has been consistent with her mental health treatment, and has been able to recognize the effects of sexual trauma with respect to her [C]hildren's behavior. It appears that Mother has begun to understand the effect of exposing A.H. to Maternal Grandfather again. She has also been able to recognize the great likelihood that her [C]hildren have been victims of sexual abuse. Mother's parenting skills have improved[,] although she still can become overwhelmed when visiting with all of the [C]hildren. While Mother may not be prepared for the immediate return of these [C]hildren to her care, it would be unfair to negate her compliance and progress in this case.

Id. at 15 (emphasis added).

This Court has observed previously that "termination under Section 2511(a)(8), does not require an evaluation of [a m]other's willingness or ability to remedy the conditions that led to placement of her children." R.J.S., 901 A.2d at 511 (emphasis in original). To the contrary, in reviewing whether termination pursuant to Section 2511(a)(8) was appropriate, we have rejected arguments highlighting the progress a parent has made. C.L.G., 956 A.2d at 1007-08 (concluding parent's progress addressing drug addiction did not toll indefinitely child's need for well-being and permanency); In re I.J., 972 A.2d 5, 11 (Pa.Super. 2009) (concluding lower court conflated requirements of subsections (a)(2) and (a)(5) with (a)(8); rejecting "significant strides" remedying some conditions); R.J.S., 901 A.2d at 511-13 (rejecting lower

court's acceptance that mother could remedy drug abuse and neglect within reasonable time); In re S.H., 879 A.2d 802, 806 (Pa.Super. 2005) (rejecting mother's "significant life achievements" in light of "competent evidence that the conditions [for removal] continue to exist").

Indeed, in the Section 2511(a)(8) analysis, a parent's progress is irrelevant. Provided the evidence of record is credible, clear, and convincing, the second requirement of Section 2511(a)(8) presents a binary choice: either the conditions leading to removal continue to exist, or they do not.

We have remarked that the application of this section may seem harsh, particularly where, as here, a parent has made meaningful progress. Nevertheless, we have also recognized that Section 2511(a)(8) reflects a balance between affording a parent time to make sufficient strides toward adequately discharging parental duties and ensuring a child's welfare.

> [B]y allowing for termination when the conditions that led to removal of a child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit eighteen (18) months, in which to complete the process of either reunification or adoption for a child who has been placed in foster care.

R.J.S., 901 A.2d at 513 (internal citation omitted) (emphasis in original).

Clearly, Mother's progress is evidence of her willingness and or ability to remedy the conditions that led to the Children's removal in September

2016. This evidence does not, however, demonstrate that those conditions no longer exist. In particular, we note that Mother's mental health remains a hindrance to the Children's return, as does a lingering concern for her ability to ensure their safety. While the record is not entirely clear on this point, the court seemingly acknowledges that Mother has yet to comply fully with her mental health recommendations. See Orphans' Ct. Op. at 14 (citing testimony that Mother is not "back on medication"). Moreover, implicitly, the court reinforces the safety concern when it concedes that "Mother has begun to understand the effect" of exposing her Children to sexual abuse. Id. at 15 (emphasis added). In light of these findings, recognition by the orphans' court that Mother is not yet prepared for the immediate return of the Children undermines its conclusion that Mother has remedied the conditions leading to their removal. Thus, we conclude the court erred as a matter of law. See R.J.S., 901 A.2d at 512.

Finally, in order to establish the third statutory requirement of Section 2511(a)(8), the evidence must demonstrate that termination of parental rights would best serve the needs and welfare of the child. C.L.G., 956 A.2d at 1009 (acknowledging this element of Section 2511(a)(8) coincides with Section 2511(b) but directing distinct analyses); P.Z., 113 A.3d at 851; 23 Pa.C.S. § 2511(a)(8). As with Section 2511(b), this element focuses on the child and his or her needs, rather than the parents' conduct. R.J.S., 901 A.2d at 514.

> The court must consider the needs and welfare of the children, including the presence of any parent-child emotional bond, which encompasses intangibles such as love, comfort, security, and stability. When an emotional bond is present between parent and child, the court must consider the effect of its permanent severance on the child. Our Supreme Court has spoken in no uncertain terms about the importance of this consideration in a termination case: "To render a decision that termination serves the needs and welfare of the child without consideration of emotional bonds, in a case such as this where a bond, to some extent at least, obviously exists … is not proper." In re E.M., 533 Pa. 115, 123, 620 A.2d 481, 485 (1993). Consistent with our Supreme Court's directive, we have reversed and remanded termination cases in which the child welfare agency failed to present sufficient evidence concerning the presence or absence of a parent-child bond and the likely effect of its permanent cleavage on the child.

Id. (some citations omitted).

Although the orphans' court concluded that OCYF failed to meet the statutory requirements of Section 2511(a)(8), it explicitly declined to address the needs and welfare of the Children. Orphans' Ct. Op. at 12, 16. This, too, constitutes legal error. R.J.S., 901 A.2d at 514.

OCYF suggests further that there is clear and convincing evidence that termination of Mother's parental rights to the Children would best serve their needs and welfare. OCYF's Br. at 41 (directing our attention to its substantive analysis of subsection (b)), 47-50 (discussing testimony). We have reviewed the entire record. While we do not dispute that OCYF provided evidence that Mother's mental health and the Children's safety remain concerns, and that the Children were bonded with their foster caregivers, who in turn may be appropriate adoptive resources, we observe that testimony also suggests that

the Children, particularly the older two, maintain a strong bond with Mother. See, e.g., N.T. 44-49 (testimony from Dr. Bliss addressing bond between Mother and Children), 67 (testimony from Dr. Bliss indicating inability to compare A.F.'s bond with Mother to bond A.F. has developed with foster mother). Moreover, despite evidence suggesting that the Children are thriving in their current placement, OCYF presented very limited testimony regarding the effects of severing this bond:

> [Mother's Attorney:] In fact, you said there's a bond. What's going to happen to these children if [Mother is] removed from their lives completely?
>
> [Caseworker:] I think they'll be—I think they'll be fine …
>
> [Mother's Attorney:] Okay. My question is now. You're asking this [c]ourt to terminate the relationship.
>
> [Caseworker:] Yes.
>
> [Mother's Attorney:] What would happen?
>
> [Caseworker:] They will—
>
> [Mother's Attorney:] It's not going to matter to these kids?
>
> [Caseworker:] I think they'll be ok. I think they'll be fine. They're going to—they are bonded to where they're living now. They're not going to—I don't think that they will—they'll probably miss her, miss [Mother], miss their mom, but I think they'll be fine. They're not going to fully—I don't think that they will have that need to consistently need to [sic] see her.

N.T. at 106-07. This is the sole testimony directly relevant to the impact termination of Mother's parental rights would have on the Children.

Mindful of our standard of review, we shall not usurp the role of the orphans' court as factfinder. See R.J.S., 901 A.2d at 506-07. We shall not

weigh this evidence nor pass judgment on its credibility. Id. Thus, we decline to credit OCYF's suggestion that it established the third statutory requirement of Section 2511(a)(8).

For these reasons, we vacate the orders denying OCYF's petitions to terminate Mother's parental rights to the Children and remand for further proceedings. On remand, the orphans' court shall address its legal errors, consistent with the above analysis. In light of the limited testimony indicative of the effects termination would have on the bond between Mother and the Children, the parties must be given an opportunity to present further evidence in this regard. Id. at 516.

Orders vacated; case remanded for further proceedings; jurisdiction relinquished.

Judge Olson joins the Memorandum.

Judge Strassburger files a Concurring Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/17/2018